**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


**TERRI S. L.,**

      **Plaintiff,**

    **v.**

**COMMISSIONER OF SOCIAL
SECURITY,**

      **Defendant.**

        **Civil Action 2:25-cv-866**
        **Judge Edmund A. Sargus, Jr.**
        **Magistrate Judge Chelsey M. Vascura**


**REPORT AND RECOMMENDATION**

Plaintiff, Terri S. L. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income benefits ("SSI"). This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 9), the Commissioner's Memorandum in Opposition (ECF No. 11), and the administrative record (ECF No. 7).  For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

## I.      BACKGROUND

Plaintiff protectively filed her SSI application in July 2022, alleging that she became disabled beginning August 16, 2017. (R. at 179–84.) After Plaintiff's application was denied initially and upon reconsideration, an Administrative Law Judge ("ALJ") held a telephonic hearing on May 21, 2024, at which Plaintiff, who was represented by counsel, appeared and testified. (*Id*. at 75, 96, 36–74.) A vocational expert ("VE") also appeared and testified at that

hearing. On August 13, 2024, the ALJ issued an unfavorable determination, which became final on June 3, 2025, when the Appeals Council declined review. (R. at 12–35, 1–6.)

Plaintiff seeks judicial review of that unfavorable determination. She contends that the ALJ reversibly erred when evaluating medical opinion evidence from her therapist, Christi Pridemore, M.S.- L.C.C.-S. ("LPC Pridemore"). (Pl.'s Statement of Errors 7–12 ECF No. 9.) Defendant correctly contends that this contention lacks merit. (Def.'s Mem. in Opp'n 3–6, ECF No. 11.)

## II.  THE ALJ'S DECISION

The ALJ issued the unfavorable determination on August 13, 2024. (R. at 12–35.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity since her July 2022 application date. (*Id*. at 17.) At step two, the ALJ

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

found that Plaintiff had the following severe medically determinable impairments: degenerative

disc disease of the lumbar and cervical spines; left hip dysplasia; minimal degenerative joint

disease of the right hip; borderline personality disorder; bipolar disorder; post-traumatic stress

disorder (PTSD); and binge eating disorder. (*Id*.) At step three, the ALJ found that Plaintiff did

not have an impairment or combination of impairments that met or medically equaled one of the

listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 19.)

The ALJ then set forth Plaintiff's residual functional capacity ("RFC")[2] as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can never climb ladders, ropes, and scaffolds. She can occasionally climb ramps and stairs, balance as defined by the Selected Characteristics of Occupations ("SCO"), stoop, kneel, crouch, and crawl. She can occasionally use foot controls with the lower extremities. She must avoid all exposure to hazards. She must alternate between sitting and standing every thirty minutes for approximately five minutes at a time. The claimant can understand, remember, and carry out simple instructions. She cannot perform work that requires a specific production rate, such as assembly line work, or work that requires hourly quotas. She can adapt to occasional changes in a work setting. She can have occasional interaction with supervisors and coworkers, can have no interaction with the public, and can have superficial interaction with others, meaning of a short duration for a specific purpose

(*Id*. at 21.)

At step four, the ALJ determined that Plaintiff had no past relevant work. (*Id*. at 28.)

Relying on VE's testimony at step five, the ALJ determined that considering her age, education,

work experience, and RFC, there were jobs that existed in significant numbers in the national

economy that Plaintiff could perform including the representative jobs of table worker, dowel

inspector, and surveillance system monitor. (*Id*. at 28–29.) Accordingly, the ALJ determined that

---

[2] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations" "on a regular and continuing basis." 20 C.F.R. § 416.945(a)(1), (b)–(c).

Plaintiff was not disabled as defined in the Social Security Act during the relevant time frame. (*Id*. at 44)

### III.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). While this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y Of Health And Hum. Servs.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a

4

substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV.    ANALYSIS

As explained above, Plaintiff contends that the ALJ committed reversible error when evaluating medical opinions from her therapist, LPC Pridemore. (Pl.'s Statement of Errors 7–12, ECF No. 9.) Specifically, Plaintiff contends that the ALJ failed to adequately explain the consistency factor when she evaluated the persuasiveness of LPC Pridemore's opinion. (*Id.*) The undersigned concludes that Plaintiff's contention lacks merit.

An ALJ's RFC determination must be "based on all the relevant evidence" in a claimant's case record. §§ 404.1545(a)(1); 416.945(a)(1). The governing regulations[3] describe five categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5). An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering those categories of evidence: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program s policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

---

[3] Because Plaintiff's applications were filed in 2022, they are subject to regulations governing applications filed after March 27, 2017.

Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. *Id.* With regard to supportability "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[ ] . . . the more persuasive the medical opinions  . . . will be." 20 C.F.R. § 416.920c(c)(1). For consistency, "[t]he more consistent a medical opinion[ ] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[ ] . . . will be." 20 C.F.R. § 416.920c(c)(2).

Here, LPC Pridemore completed a checkbox-style provider statement on May 4, 2022. (R. at 619–20.) The ALJ determined that the opinions in that checkbox form were not persuasive and articulated her reasons for that determination. (*Id*. at 26–27.)

The ALJ summarized the form as follows:

> Ms. Pridemore completed a form addressing the claimant's mental abilities and aptitudes needed to do unskilled work, to do semiskilled and skilled work, and needed to particular types of jobs (17F). Ms. Pridemore opined the claimant was unable to meet competitive standards with regard to dealing with work stress or responding to changes in a routine work setting, was seriously limited in several areas including maintaining attention for two-hour segments, working in coordination with others without being unduly distracted, and completing a normal workday without interruptions from psychologically based symptoms (17F). Ms. Pridemore also opined the claimant was seriously limited in understanding remembering and carrying out detailed instructions as well as dealing with the stress of semiskilled and skilled work (17F). Ms. Pridemore opined the claimant was seriously limited in travel of unfamiliar places and had limited but satisfactory ability to interaction with the general public appropriately, maintain socially appropriate behavior, and use public transportation (17F/2). Ms. Pridemore also opined the claimant would be absent from work more than four days per month (177F/2). To support these limitations, Dr. Pridemore cited to the claimant's difficulty maintaining stability of her mental health effecting her emotionally and physically as well as noting issues with being in unfamiliar places exacerbating symptoms.

(*Id*.) The ALJ then explained that although LPC Pridemore's opinions were adequately supported, they were not consistent with other record evidence, writing as follows:

6

> While the explanation supporting the limitations appears adequate, the claimant's records do not reflect the degree of symptomology described. For example, the claimant's performance during consultative examination and within treatment records contain generally normal psychological findings with some variability (e.g., 11F; 18F; 21F). Moreover, the claimant's performance when not taking medications for three weeks demonstrates far better control of psychological symptoms than described within this opinion (e.g., 21F/2). Thus, the record is more consistent with lessor limitations than opined by Ms. Pridemore.

(*Id*. at 27.)

As this discussion demonstrates, the ALJ determined that even though LPC Pridemore's opinions were adequately supported, they were inconsistent with other record evidence including Plaintiff's performance during her consultative examination. Substantial evidence supports that determination. For instance, LPC Pridemore opined that Plaintiff was seriously limited in understanding, remembering, and carrying out detailed instructions. (*Id*. at 619.) But during her consultative examination, Plaintiff was noted to have an "adequate level of understanding" and her "level of intellectual functioning" fell only "slightly below normal limits." (*Id*. at 538.) Plaintiff's speech rate was normal, and she did not have loose associations, flight of ideas, or delusional beliefs. (*Id*.) Plaintiff's memory was also largely intact— she could recall five digits forward, three digits backward, and two out of three words after a brief delay. (*Id*.)

Plaintiff contends that the ALJ improperly relied on the consultative examination because she determined that the examiner's opinions were not persuasive. (Pl.'s Statement of Errors 10, ECF No. 9.) But the ALJ relied on the consultative examiner's clinical findings, which are distinct from the examiner's opinions, and which appeared in a separate "functional assessment" section of the examiner's report. (R. at 535–40.) Indeed, the examiner's findings consisted of clinical observations and the results of mental status examinations such as memory and verbal reasoning tests. (*Id*.) Medical opinions, on the other hand, are defined as "statement[s] from a medical source about what you can still do despite your impairment(s) and whether you have one

or more impairment-related limitations or restrictions" in the ability to perform the physical and mental demands of work activities. 20 C.F.R. § 416.913(a)(2). Rejection of the latter does not necessarily imply or require rejection of the former.

In any event, the ALJ also determined that LPC Pridemore's opinions were inconsistent with other treatment records reflecting Plaintiff's performance during examinations including treatment records from an examination in February 2024. (R. at 27 (citing R. at 620–43).) Substantial evidence supports that determination. LPC Pridemore opined that Plaintiff would be severely limited in her ability to deal with the stress of semiskilled or skilled work. (*Id*. at 619.) But as the ALJ explained elsewhere in the determination, in February 2024, Plaintiff reported a minimal tolerance for stress, and that caused her bipolar symptoms to flare, but she also reported that she had effectively managed those symptoms "over the years" with medication. (*Id*. at 25, 625.) A mental status examination that day was also "unremarkable," and Plaintiff was noted to have unremarkable affect, mood, perceptions, intellectual functioning, insight, judgment, and memory. (*Id*. at 25, 633–34.)

The ALJ also determined that LPC Pridemore's opinions were inconsistent with Plaintiff's condition during a period without her prescribed medications. (*Id*. at 27.) Substantial evidence supports that determination as well. The ALJ accurately explained elsewhere that in March 2024,  Plaintiff reported not taking her mental health medications for three weeks after her primary care physician discontinued them. (*Id*. at 25, 705.) During an examination that day, Plaintiff's mood was hostile and depressed; her affect was labile; her recent memory, attention, and abstract thinking were impaired; and her thought processes were impulsive. (*Id*. at 711–12.) Nevertheless, Plaintiff was oriented; her speech had regular rate, rhythm, and volume; and she used appropriate language. (*Id*. at 711.) Moreover, and as the ALJ also explained elsewhere,

Plaintiff was started on Buspirone, and she reported some improvements in April 2024. (*Id*. at 25, 719.) A mental status examination in April 2024 also noted that Plaintiff had appropriate mood and affect, no recent and remote memory impairments, and her attention and concentration were within normal limits. (*Id.* at 724–25.)

Other treatment records likewise showed that Plaintiff was routinely noted to have normal or appropriate mood or affect during examinations. (*Id*. at 372, 374, 376, 378, 379, 381, 384, 385, 389, 391, 393, 456, 518, 558, 660.) Her cognitive function was also noted to be intact at times (*id*. at 300, 304) and she was described as cooperative (*id*. at 300, 304, 456, 518).

In short, the ALJ adequately considered and explained the consistency factor by comparing LPC Pridemore's opinions to other record evidence. The ALJ's discussion of that comparison built a logical bridge between the record evidence and her conclusions about the persuasiveness of LPC Pridemore's opinions. Plaintiff, therefore, has not demonstrated reversible error.

## V.     RECOMMENDED DISPOSITION

Accordingly, for all the reasons contained herein, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## <u>PROCEDURE ON OBJECTIONS</u>

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations

to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


**IT IS SO ORDERED.**


/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE